Frank J. RUIZ, Petitioner–Appellant,

v.

Elmer O. CADY, Superintendent, Wisconsin State Reformatory, Respondent–Appellee.

No. 78–2041.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 6, 1980.*

Nov. 7, 1980.

"Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a); Circuit Rule 14(f). Ruiz has filed such a statement. Upon consideration of Ruiz' statement, the briefs and the record, this appeal is submitted for decision without oral argument.

Charles Bennett Vetzner, State Public Defender, Madison, Wis., for petitioner–appellant.

Nadim Sahar, Dept. of Justice, Madison, Wis., for respondent- appellee.

Before CUMMINGS, BAUER and CUDAHY, Circuit Judges.

PER CURIAM.

The petitioner appellant, Frank J. Ruiz, appeals from the denial of his petition for a writ of habeas corpus. As the sole ground for relief, Ruiz asserts that he was denied due process when the prosecutor failed to disclose "that the state's primary witness, Thomas Garcia, was given assurance that he would not be likely to be sentenced to prison in an unrelated case if he testified against [Ruiz]." On appeal, two issues are presented: (1) whether the district court erred in denying habeas relief without examining the entire state court record; and (2) if not, whether the decision on the merits of Ruiz' claim was correct. However, because we find that the district court improperly relied upon the state appellate court's determination of the crucial issue presented, we need not decide the latter issue. Instead, we vacate the district court's judgment and remand for further proceedings.

I.

On October 31, 1974, after a jury trial in Branch 5 of the Racine County Court, Racine, Wisconsin, Ruiz was convicted of first–degree murder and immediately sentenced to a mandatory term of life imprisonment which he currently is serving in the Wisconsin State Reformatory in Green Bay.

After a hearing on January 22, 1975, Ruiz' post–verdict motions for a new trial were denied by the trial court. Shortly after the decision of *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), Ruiz' conviction was affirmed without oral argument by the Wisconsin Supreme Court. With respect to the claim urged on habeas corpus, it held that Ruiz was not denied due process because of the prosecutor's failure to disclose the existence of the assurances given to Garcia. *Ruiz v. State*, 75 Wis.2d 230, 249 N.W.2d 277 (1977).

On March 30, 1978, Ruiz filed the instant petition for a writ of habeas corpus. As set forth above, the sole ground for relief asserted was that the prosecutor withheld exculpatory evidence.[1] However, Ruiz admitted that the undisclosed evidence was not requested. To his return to the petition Cady annexed, *inter alia*: (1) transcripts of hearings related to the trial court's issuance of bench warrants to secure the attendance at trial of several prosecution witnesses, including Garcia, who had failed to appear on the original trial date despite a subpoena ordering him to do so; (2) the transcript of the hearing on Ruiz' post–verdict motions for a new trial; (3) both sides' state appellate briefs; and (4) the opinion of the Wisconsin Supreme Court. The district court was informed that transcripts of the arraignment, trial and sentencing proceedings were available upon request. However, the record does not indicate that these were requested or received by the court. Applying *Agurs*, the district court denied the petition without a hearing, finding that the agreement with Garcia did not raise a reasonable doubt about guilt. The basis for this conclusion, which is the primary subject of the parties' dispute, was that "Mr. Garcia's testimony at trial was substantially consistent with his testimony at Mr. Ruiz' preliminary hearing which took place before the agreement between the two prosecutors. *Ruiz v. State*, 75 Wis.2d 230, 238 [249 N.W.2d 277] (1977)."

## II.

■ Whether the prosecutor's failure to disclose the existence of the agreement with Garcia violated Ruiz' right to due process depends solely upon the materiality of the agreement. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Generally, where, as here, no request for the evidence was made, to give rise to a due process violation the undisclosed evidence must create "a reasonable doubt about guilt" which would not exist otherwise. *United States v. Agurs*, 427 U.S. at 112–13, 96 S.Ct. at 2401–02. However, in cases such as this, in which the undisclosed evidence is useful only for impeachment, the Fifth Circuit employs the arguably stricter standard applicable to the disposition of motions under Fed.R.Crim.P. 33, *see Garrison v. Maggio*, 540 F.2d 1271, 1273–74 (5th Cir. 1976), *cert. denied*, 43 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977) ("probably would have resulted in an acquittal"), while the Third Circuit retains the *Agurs* standard. *See United States v. McCrane*, 547 F.2d 204 (3d Cir. 1976) (per curiam) (on remand for reconsideration in the light of *Agurs*). Not only is *McCrane* more consistent with *Agurs* than is *Garrison, compare, e. g., Agurs*, 427 U.S. at 111, 96 S.Ct. at 2401, *with McCrane*, 547 F.2d at

---

1. Ruiz' thesis is as follows: After testifying at the preliminary hearing, Garcia realized that if he helped convict Ruiz and was sentenced to prison himself on a then pending, unrelated charge it was possible that he and Ruiz would be incarcerated in the same institution, where Ruiz might retaliate against him. Accordingly, Garcia was reluctant to testify at trial. In fact, Garcia failed to appear on the original trial date, as did other prosecution witnesses. To allay Garcia's fears, the prosecutor assured him that he would write to the Kenosha County District Attorney who was handling Garcia's case and recommend that Garcia not be incarcerated on the charge pending against him. Reportedly, Garcia eventually was sentenced to a term of imprisonment, notwithstanding these assurances. Ruiz cogently argues that these assurances gave Garcia a motive to make his testimony at trial more inculpatory. He claims that the fact that the assurances had this effect is demonstrated by the inconsistencies between Garcia's testimony at the preliminary hearing, which apparently was given before the agreement arose, *see* note 3, *infra*, and his testimony at trial.

205–06,[2] but the difference between the Rule 33 and *Agurs* standards may be chimerical, even though the two are contrasted both in *Agurs* and *Garrison*, because evidence which "raises a reasonable doubt about guilt" (the *Agurs* standard) should result in an acquittal. Consequently, the district court correctly concluded that the *Agurs* standard applied.

█ In this case, however, formulating the applicable standard is not as important as recognizing "that the omission must be evaluated in the context of the entire record [because] if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Agurs*, 427 U.S. at 113–14, 96 S.Ct. at 2402 (footnote omitted). Thus, when "*Brady*" claims such as Ruiz' are raised, an examination of the entire record is required. *See, e. g., United States v. Weidman*, 572 F.2d 1199 (7th Cir.), *cert. denied*, 439 U.S. 821 (1978);

United States v. Disston*, 582 F.2d 1108 (7th Cir. 1978), *appeal after remand*, 612 F.2d 1035 (7th Cir. 1980).

Such an examination is essential to a proper disposition of this case in which the dispute between the parties is reduced to a debate concerning the degree of variation between Garcia's testimony at the preliminary hearing and at trial.[3] The Wisconsin Supreme Court determined that Garcia's testimony was substantially consistent, as follows:

> There was a minor discrepancy between the testimony of Garcia at the preliminary examination and at trial. At the preliminary, Garcia, who was at the other end of the bar from Ruiz and his victim, stated that he had not been observing the patrons at the other end of the bar and only turned around when he heard the breaking of bottles, and it was then he saw Ruiz strike Cisneroz with a knife.

**2.** This conclusion also is supported by the following analysis. While the evidence in *Agurs* was not impeachment evidence, neither was it direct, exculpatory evidence such as the undisclosed evidence in *Brady*. The *Agurs* evidence consisted of the homicide victim's prior criminal record which purportedly evidenced his violent character and supported the defendant's claim of self–defense. 427 U.S. at 99–100, 96 S.Ct. at 2395–2396. In *Brady*, the undisclosed evidence, which was relevant to punishment, consisted of the confession of the defendant's accomplice which supported the defendant's allegation that it was the accomplice who actually strangled the decedent. 373 U.S. at 84, 83 S.Ct. at 1195. The *Agurs* Court did not explain its application of a different standard than that applied in *Brady* in terms of the difference in the character of the evidence in the two cases. Rather, the application of a different standard was justified because of the absence of a specific defense request for the undisclosed evidence in *Agurs* and the presence of such a request in *Brady*. 427 U.S. at 104, 107, 96 S.Ct. at 2397, 2399. Thus, the analysis utilized by the Court in *Agurs* does not support the application of a different standard to "*Brady*" claims on the basis of the character of the undisclosed evidence. In other words, the question of whether a prosecutor's failure to disclose evidence violated due process is distinct from the question of what standard applies in making that determination.

**3.** Several other important issues are conceded. Cady agrees that Garcia was a crucial prosecution witness. As discussed above, Ruiz admits that the undisclosed evidence was not requested. Note 1, *ante*.

In this appeal, Ruiz questions, apparently for the first time, the Wisconsin Supreme Court's determination that the agreement arose after the preliminary hearing. (This determination is the reason that the dispute regarding materiality has focused upon a comparison of Garcia's testimony at trial and at the preliminary hearing. If his testimony did not change as a result of the agreement, then the impeachment value of the agreement and, therefore, its materiality would be greatly reduced.) On direct appeal as before the district court, Ruiz made no allegation regarding the timing of the agreement. However, on direct appeal he strenuously argued that Garcia's testimony at trial was inconsistent with and more damaging than his earlier testimony. In the district court proceedings, one of Ruiz' exhibits supported the conclusion that the agreement arose after the preliminary hearing. *See also* discussion note 1, *ante*. During the hearing on Ruiz' post–verdict motions, both parties based their arguments on the apparent assumption that the agreement arose after the preliminary hearing. It is axiomatic that arguments raised initially on appeal will not be considered. *Laketon Asphalt Refining, Inc. v. U. S. Dept. of Interior*, 624 F.2d 784 at 788 (7th Cir. 1980) (citing cases). Consequently, in this appeal it will be assumed that the agreement arose after the preliminary hearing. However, on remand Ruiz may be permitted to allege and attempt to prove otherwise.

At trial Garcia said he had been watching, and he saw the defendant stab Cisneroz before he fell against the bar and broke the bottles. In other respects the testimony at the preliminary and at the trial was substantially the same. Garcia did not equivocate in respect to the facts of the stabbing. He never claimed to have seen a fight.

75 Wis.2d at 233, 249 N.W.2d 277.

 Without examining the entire state court record, the district court adopted this determination. Pursuant to the analysis utilized in *Agurs*, which requires that the undisclosed evidence be evaluated in light of the entire record, this mode of disposition was erroneous, most obviously because the district court should have determined for itself the extent to which Garcia's testimony was consistent. Also, without examining the trial transcript the district court could not adequately assess other possible exculpatory effects of the undisclosed evidence. For example, depending upon the extent to which Garcia's testimony was impeached otherwise, the undisclosed evidence might have been either cumulative or fatal to the prosecution's case. Similarly, the exculpatory value of impeaching Garcia's testimony may depend upon the extent to which Ruiz' trial testimony was shaken.

## III.

 Cady argues that the Wisconsin Supreme Court's determination that Garcia's testimony was consistent is a factual determination and, therefore, is presumptively correct under 28 U.S.C. § 2254(d).[4] He maintains, therefore, that the district

court's failure to examine the state court record was not erroneous. He argues further that the state court determination was not contested by Ruiz below, thereby abrogating any obligation which the district court otherwise would have had to review the entire record. Ruiz maintains that the state court determination was contested sufficiently. Insofar as both parties characterize the Wisconsin Supreme Court's determination as factual, they miss the mark completely.[5]

Pursuant to the analysis set forth in *Davis v. Heyd*, 479 F.2d 446 (5th Cir. 1973), § 2254(d) is inapplicable to the Wisconsin Supreme Court's determination. In *Davis* a state prisoner who had been convicted of manslaughter unsuccessfully petitioned the district court for a writ of habeas corpus. He claimed that the prosecutor failed to disclose exculpatory evidence which consisted, *inter alia*, of written statements taken from witnesses shortly after the incident from which the charges arose. The petitioner claimed that the shooting, which he admitted having committed, was accidental. He argued that the undisclosed statements supported his theory of the case while the witnesses' trial testimony did not. The state appellate court had rejected this same claim because it found no substantial inconsistencies between the witnesses' written statements and their trial testimony, thereby rendering the undisclosed evidence immaterial. The district court denied relief on alternative grounds, the first of which was that the state appellate court's consistency determination was presumptively correct under § 2254(d). The Court of Appeals

---

4. In ruling on Ruiz' post–verdict motions, the trial court also found that Garcia's testimony was consistent. However, it is not claimed, and it does not appear, that § 2254(d) applies to this determination because it was not "evidenced by a written finding, written opinion, or other reliable and adequate written indicia. . . ." 28 U.S.C. § 2254(d).

5. Similarly, Ruiz' reliance upon *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and its progeny, e. g., *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978), is misplaced. *Giglio* rested primarily upon *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d

1217 (1959), which proscribed as violative of due process a prosecutor's failure to correct testimony which he knew to be false. In both *Giglio* and *Butler* key prosecution witnesses testified at trial that they were not given promises of leniency with respect to other charges then pending against them, and in *Giglio* the witness' testimony was reinforced by the prosecutor's remarks during summation. Here, Ruiz has claimed neither that Garcia was questioned at trial about the promises given to him, nor that either Garcia or the prosecutor deceived the jury with respect to the existence of them.

reversed. It held that the consistency determination, like the materiality determination, was a legal one to which the § 2254(d) presumption was inapplicable. The court reasoned as follows:

> [B]oth questions are inextricably intertwined with each other . . . [T]he facts *vel non* are not in dispute. We know what the statements said, and we know what the witnesses said at trial. The initial task is only to compare the transcribed content of the [witnesses'] trial testimony with the transcribed content of their out-of-court statements and then to determine if they are inconsistent. The issue is not factual under any traditional definition of the term "fact". Its resolution does not require proof instead of argument; it does not involve reconstruction of historical facts; it does not require a finding as to the intent of the witnesses who signed the statements; nor does it require credibility choices based on the demeanors of the witnesses.

479 F.2d at 451.

Recent Supreme Court precedent also supports our conclusion that the Wisconsin Supreme Court's determination was not presumptively correct under § 2254(d). In *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), a state prisoner petitioned for a writ of habeas corpus claiming ineffective assistance of counsel because of multiple representation. Two privately retained attorneys participated in the three separate trials of the petitioner and his two co-defendants. Contrary to a magistrate's finding, the district court concluded that there had been no multiple representation, accepting the determination of the state appellate court. 100 S.Ct. at 1713. The Third Circuit rejected this determination and reversed. It held that the two attorneys' participation in the three trials established multiple representation as a matter of law. *Id.* In the Supreme Court, the State argued that under § 2254(d) the state court determination was presumptively correct and, therefore, that the Court of Appeals had exceeded the proper scope of review. The Court rejected these arguments. It found that the determination of whether there had been multiple representation, upon which resolution of the ultimate question of whether the petitioner had been deprived of the effective assistance of counsel turned, was a "mixed determination of law and fact that requires the application of legal principles to the historical facts . . . ." 100 S.Ct. at 1715 (citations omitted). Consequently, the Court held that the Court of Appeals had not exceeded the proper scope of review. So too in this case, the consistency determination requires the application of legal principles to historical facts. Such "mixed" questions must be determined independently by a federal habeas court. *Brown v. Allen,* 344 U.S. 443, 507, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (Frankfurter, J., concurring).

In summary, whether characterized as a purely legal determination as in *Davis,* or as a mixed determination of law and fact as in *Cuyler,* the consistency determination in this case should have been made independently by the district court on the basis of the entire record.[6]

---

**6.** Even accepting the parties' characterization of the consistency determination as factual, the Seventh Circuit precedents cited by them suggest disapproval of the district court's application of the § 2254 presumption to the Wisconsin Supreme Court's determination. In *United States ex rel. Worlow v. Pate,* 411 F.2d 972 (7th Cir. 1969), *appeal after remand,* 437 F.2d 909, *cert. denied,* 403 U.S. 921, 91 S.Ct. 2238, 29 L.Ed. 699 (1971), applying *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), this court recognized that an examination of the state court record is an essential prerequisite to the application of the § 2254(d) presumption, which is inapplicable if " 'the ha-

beas applicant was [not] afforded a full and fair hearing by the state court. . . .' " *Worlow,* 411 F.2d at 974 (*citing Townsend,* 372 U.S. at 318, 83 S.Ct. at 759). Cady argues that this case is distinguishable from *Worlow* because Ruiz did not contest the state court's determination. However, the record does not support this argument. While it is true that Ruiz did not expressly contest the state court's determination in his petition or brief in the district court, Ruiz relied therein upon the statement of facts presented in his state court appellate brief. As discussed in note 3, *ante,* in Ruiz' state court brief the consistency issue was explored fully. Because the state court brief was part of the

For these reasons, the district court's judgment is vacated and the case remanded for further proceedings consistent with this opinion.

VACATED and REMANDED.

district court record, Ruiz' reliance upon it was justified and constituted sufficient disputation of the state court's finding. *Cf. Montes v. Jenkins*, 581 F.2d 609 (7th Cir. 1978), *appeal after remand*, 626 F.2d 584 (7th Cir. 1980) (factual determinations contested in Petitioner's Memorandum in Support). Moreover, assuming that the agreement arose after the preliminary hearing, *see* note 3, *ante*, it would have been mere sophistry for Ruiz to have filed the instant petition and not to have contested the state court's determination. *Compare Blenski v. LaFollette*, 581 F.2d 126 (7th Cir. 1978). Finally, in *United States ex rel. Rebenstorf v. Pate*, 417 F.2d 1222 (7th Cir. 1969), this court approved the district court's reliance upon state appellate court factual determinations. 417 F.2d at 1225. However, there is no indication that the district court applied § 2254(d) without examining the state court record. In fact, with respect to one issue in the case regarding which the district court failed to examine the pertinent part of the state record, this court found the district court's application of § 2254(d) to have been improper. 417 F.2d at 1226.

Moreover, this court has noted that application of § 2254(d) to state appellate court factual determinations should be minimized because the reasons underlying the presumption may be inapplicable to appellate court findings. *White v. Finkbeiner*, 570 F.2d 194, 201 (7th Cir. 1978), *appeal after remand*, 611 F.2d 186 (1979), *cert. filed*, May 15, 1980 (*citing Hill v. Nelsen*, 466 F.2d 1346, 1348 (9th Cir. 1972)); *Accord Drayton v. Hayes*, 589 F.2d 117, 122, n.9 (2d Cir. 1979); *Thomas v. Craven*, 473 F.2d 1235, 1236 (9th Cir. 1973) (per curiam).