**Frank J. RUIZ, Petitioner,**

v.

**Elmer O. CADY, Superintendent, Wisconsin State Reformatory, Respondent.**

No. 78–C–170.

United States District Court,
E. D. Wisconsin.

Aug. 11, 1982.

David C. Niblack, State Public Defender by Charles B. Vetzner, Asst. State Public Defender, Madison, Wis., for petitioner.

Bronson C. LaFollette, Wis. Atty. Gen. by Michael R. Klos, Asst. Atty. Gen., Madison, Wis., for respondent.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

The petitioner, Frank Ruiz, was tried and found guilty of first degree murder on October 31, 1974, in Racine County, Wisconsin. He was convicted of stabbing Frank Cisneroz twice in the chest on September 10, 1973, in a tavern in Racine County. Mr. Ruiz is now serving a term of imprisonment for life for the offense.

The petitioner moves for summary judgment granting his petition for a writ of habeas corpus. He makes two arguments in support of his motion. First, he claims that the state's failure to disclose certain exculpatory evidence violated his right to due process. Secondly, the petitioner argues that an instruction on intent read to the jury was unconstitutional. The petitioner does not succeed on either ground.

Mr. Ruiz' habeas corpus petition was originally dismissed by this court on July 18, 1978. *Ruiz v. Cady,* 453 F.Supp. 617 (E.D. Wis.1978). That judgment was vacated and the case remanded by the court of appeals for the seventh circuit on November 7, 1980. *Ruiz v. Cady,* 635 F.2d 584 (7th Cir. 1980). On remand, I granted the petition because of the respondent's unwarranted delay in proceeding with the case. *Ruiz v. Cady,* 507 F.Supp. 50 (E.D.Wis.1981). Again my decision was reversed by the court of appeals, and the case was remanded. *Ruiz v. Cady,* 660 F.2d 337 (7th Cir. 1981). After further

briefing by the parties, the case was submitted to the court for decision on the petitioner's motion for summary judgment.

Mr. Ruiz first argues that he was denied due process of law when the prosecutor at his trial failed to disclose the fact that an agreement had been reached between the prosecutor and Thomas Garcia, a key witness against Mr. Ruiz and the only eyewitness to the stabbing. Mr. Garcia had criminal charges pending against him in another county at the time of these events. After testifying against Mr. Ruiz at the preliminary hearing, Mr. Garcia expressed fear at giving further testimony at trial when he realized it was possible that both he and Mr. Ruiz would subsequently find themselves in the same prison. To allay Mr. Garcia's fears, the prosecutor in Racine County agreed to contact the attorney prosecuting Mr. Garcia and suggest that the latter attorney recommend against incarceration for Mr. Garcia. In return, Mr. Garcia agreed to cooperate and testify against Frank Ruiz at trial. Neither Mr. Ruiz nor his attorney was aware of this agreement at the time of trial.

█ The petitioner contends that the agreement between the prosecutor and Mr. Garcia should have been disclosed because it could have been used by the defense to challenge Mr. Garcia's credibility. Mr. Ruiz' trial counsel had made a general request, pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for disclosure of all exculpatory evidence. Under these circumstances, the conviction will be set aside only if evidence of the agreement, if available to the defense as impeachment evidence, would have created a reasonable doubt that did not otherwise exist. *U. S. v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). This determination is to be made by evaluating the omission in light of the entire record. *Id.; Ruiz v. Cady,* 635 F.2d 584 (7th Cir. 1980). Accordingly, I have reviewed the entire record submitted in connection with this case, including transcripts of both Mr. Ruiz' preliminary hearing and his trial.

█ The petitioner claims that there are several areas of substantial inconsistency between Thomas Garcia's testimony at the preliminary hearing and at trial and that these inconsistencies demonstrate that the existence of the agreement altered Mr. Garcia's testimony at trial in favor of the prosecution.

The most significant alleged inconsistency in Mr. Garcia's testimony concerns his observations, or lack thereof, just prior to the confrontation between Mr. Ruiz and Mr. Cisneroz that ultimately resulted in the latter's death. The petitioner contends that Mr. Garcia's testimony at the preliminary hearing establishes that the latter was sitting at the bar and observed the sequence of events involving Mr. Ruiz and his victim only after the sound of breaking bottles drew his attention and his gaze to the two men fighting at the far end of the bar. The petitioner considers this to be an admission by Mr. Garcia of a gap in his observations.

At trial, Mr. Garcia testified that he was watching the two men *before* he heard the bottles break. He further testified at trial that the victim did not attack Mr. Ruiz first. The petitioner argues that Mr. Garcia was the only witness whose testimony indicated that the killing was sudden and unprovoked so as to justify a first degree murder conviction.

The essence of the petitioner's argument is that Thomas Garcia's trial testimony regarding the timing of his observations and the sequence of events, if believed by the jury, was the only evidence tending to negate Mr. Ruiz' trial theory of self-defense, while Mr. Garcia's testimony at the preliminary hearing was consistent with such a defense theory. Thus, it is argued that effective impeachment of Mr. Garcia's testimony concerning his observations of the events leading up to the stabbing could have made the difference between a first degree murder conviction and a manslaughter conviction for Mr. Ruiz. The petitioner claims that because Mr. Garcia's credibility was such an important factor under these circumstances, impeachment of Mr. Garcia

with evidence of his agreement with the prosecutor would have raised a reasonable doubt.

Based on my review of the entire record, I am convinced that there were no substantial inconsistencies between Mr. Garcia's testimony on this point at the preliminary hearing and at trial. During the first few minutes of direct examination at the preliminary hearing, Mr. Garcia described in his own words what happened.

"Q  What did you see this man do with the knife?

A  He just, you know, hit him with a knife. He was hit in the bar; and he just turned around and started hit him.

Q  Who did he hit with a knife?

A  The other guy, the tall guy that was in the back of him.

Q  The man that was killed?

A  Yeah. . . . He was, you know, sitting the other way around, like you; and the other guy was in the back; and he just turned around and you know, he hit him about two times, or—I don't know how many times; and then they went around; and he let him go in the floor; and the guy laid down on the floor; and he went just outside.

. . . .

Q  What did he do with the knife after he drew it?

A  He just hit the guy.

Q  Was the guy facing or turned away from him?

A  This guy was turned, you know, front of the bar; and the other guy was the same thing; but then this guy turned around.

Q  He turned him around?

A  No, this guy turned around.

Q  The defendant?

A  He turned around to face the other guy.

Q  They were facing each other?

A  Yeah.

Q  And then what happened after they were facing each other?

A  He just turned and he, you know, hit him with the knife.

Q  Did you hear any conversation between the two parties before the stabbing?

A  No, sir." Preliminary hearing transcript, pp. 42–45.

Under cross examination, Mr. Garcia testified as follows:

"Q  He was what?

A  He was sitting in the booth, or whatever you call those things in the tavern; and see, I don't know. He just grab him, and he use the knife." Id. at 88.

These statements by Mr. Garcia are consistent with his trial testimony to the effect that Mr. Ruiz was seated at the bar, then stood, turned, and stabbed Mr. Cisneroz. Trial transcript, pp. 51–52.

The petitioner argues strenuously that Mr. Garcia testified inconsistently regarding how the breaking bottles fit into the sequence of events. I believe the importance of this narrow fact is highly overestimated by Mr. Ruiz. The broader and more relevant question is what, if anything, Mr. Garcia observed just prior to the stabbing.

At trial, Mr. Garcia was asked by defense counsel whether he observed ". . . any contact between the men down at the south end of the bar before the bottle broke." Id. at 80. Mr. Garcia answered, "Yea, I seen him grab him, the other guy that was standing in the back because he just turned around." Id. Subsequently, the following exchange took place:

"Q  Now after you started to watch these men, you saw them engaged in some kind of a wrestling match or tussle, did you not?

A  That's right.

Q  And you saw Frank Ruiz on the floor?

A  No sir.

Q  And you saw Cisneroz on the floor?

A  Yea.

Q  And during that period of time you saw that the stabbing took place?

A  No, it was before that when he stand up and turned around, that's when he do the stabbing.

Q  When who stood up?

A  This guy over here.

Q   Mr. Ruiz?

A   Yea." *Id.* at 82–83.

I find this testimony to be entirely compatible with Mr. Garcia's statements at the preliminary hearing.

The following exchanges took place between Mr. Garcia and defense counsel at the preliminary hearing.

"Q   Now, as Frank [Ruiz] was leaning there back against the bar—

A   He didn't stay like that.   He just layed down, then he turned around with the other guy, but he already had his knife out.

Q   Did the two of them have a wrestling match?

A   Went around and the other guy, you know, they hit on those things; and the other guy fall down; and he just stand up.

Q   Now, was this a boxing match or wrestling match they were having?

A   No, they didn't box.   They didn't wrestle, either.

Q   Who had their arm around whom?

A   Both of them.

Q   They had their arms around each other?

A   Yeah.

Q   Did they make a complete turn of their bodies?

A   Yes, and that's when the other Frank fall down and on the floor.

.   .   .   .

Q   When they made that turn around, they were both on their feet; and then you saw the man that got killed go down to the floor?

A   Yeah, that's right.

Q   And did you see Frank Ruiz stab him?

A   Yeah, that's what I'm telling you.

Q   You saw him stab him?

A   Yeah." Preliminary hearing transcript, pp. 89–91.

The petitioner interprets this as testimony that the stabbing took place *after* the struggle between Mr. Ruiz and Mr. Cisneroz.   I conclude that the petitioner misinterprets the record on this point.   Before giving this description of the fight between Mr. Ruiz and his victim, Mr. Garcia had already stated to defense counsel several times that he had seen the actual stabbing. *Id.* at pp. 84, 86, 88 and 91.   Moreover, Mr. Garcia had given the same information to the prosecuting attorney a short time earlier.

Although defense counsel's subsequent questioning proceeded on the assumption that the victim was not stabbed until he was on the floor, that assumption was not borne out by Mr. Garcia's testimony.   The fact that Mr. Garcia answered questions in the order in which defense counsel asked them does not establish that the relevant events took place in that order.   Mr. Garcia related the events in the same sequence whenever he was allowed to do so in his own words.   At certain points during cross examination, the picture became less clear.   However, Mr. Garcia's less than expert command of the English language and his tendency not to place his answers clearly in the proper temporal context were both amply demonstrated throughout the record; in my opinion, they accounted for most of the confusion.

In summary, I find that Mr. Garcia testified in a highly consistent manner on the main issues relating to the sequence and timing of events.   Mr. Garcia observed Mr. Ruiz rise from his seat, turn, and stab Mr. Cisneroz.   The two men grabbed each other's arms and turned around; Mr. Cisneroz then fell to the floor.   Mr. Garcia did not see the victim strike Mr. Ruiz prior to the stabbing, nor did he see Mr. Ruiz lie on the floor at any time during the fight.

The petitioner also argues that Mr. Garcia testified inconsistently as to the number of beers the latter had consumed on the night of the murder.   Under cross examination at the preliminary hearing, Mr. Garcia agreed with defense counsel's estimate that he, Mr. Garcia, had consumed about ten twelve-ounce bottles of beer that night prior to witnessing the stabbing. *Id.* at 63–64.   At trial, Mr. Garcia stated that he had consumed "quite a few" beers, but he did not recall the exact number.   Trial tran-

script, pp. 66–67. Defense counsel did not attempt to use Mr. Garcia's prior testimony to refresh his recollection or to impeach him on this point. While the witness' statements at trial were not identical to those made during the preliminary hearing, I find absolutely no inconsistency between them.

Finally, the petitioner claims there is a substantial inconsistency in Mr. Garcia's testimony about the manner in which Mr. Ruiz wielded the knife. On direct examination at the preliminary hearing, Mr. Garcia demonstrated how Mr. Ruiz held the knife; under cross examination, Mr. Garcia admitted that he did not know for sure. At trial, Mr. Garcia again demonstrated how he thought Mr. Ruiz had held the knife. The description of this demonstration would appear to be very similar, if not identical, to the description of his demonstration at the preliminary hearing. Although Mr. Garcia's testimony on this point was not consistent throughout the preliminary hearing, I cannot conclude that there were substantial inconsistencies between his testimony at the preliminary hearing and at trial.

For the foregoing reasons, I am persuaded that the prosecutor's failure to disclose his agreement with the witness Thomas Garcia did not deprive Mr. Ruiz of his constitutional right to due process at trial. There were no substantial inconsistencies between Mr. Garcia's testimony at the preliminary hearing and at trial, so evidence of the agreement would not have created a reasonable doubt where none otherwise existed.

This conclusion is based on the assumption, made by both parties for purposes of this motion, that the agreement in question was made sometime after the preliminary hearing but before trial. Pursuant to the direction of the court of appeals for this circuit, the petitioner is to have an opportunity "to allege and attempt to prove otherwise." *Ruiz v. Cady,* 635 F.2d 584, 587 n.3 (7th Cir. 1980). If Mr. Ruiz desires to allege and attempt to prove that the agreement did not arise after the preliminary hearing, he should, within twenty days of the date of this order, serve and file a written statement to that effect.

The instant decision disposes of the petitioner's motion for summary judgment, but it does not purport to resolve his underlying petition for habeas corpus in its entirety. The court will consider the petition itself only after it is determined whether a factual issue exists regarding the time of the making of the Garcia agreement in relation to the preliminary hearing and the trial.

 The second argument made by the petitioner in his motion for summary judgment is that the standard Wisconsin jury instruction on intent used in his case is unconstitutional. The constitutional validity of that instruction was recently upheld in *Pigee v. Israel,* 670 F.2d 690 (7th Cir. 1982). Thus, the petitioner's second argument is without merit.

Therefore, IT IS ORDERED that the petitioner's motion for summary judgment granting his petition for a writ of habeas corpus be and hereby is denied.