Frank J. RUIZ, Petitioner-Appellant,

v.

Elmer O. CADY, Superintendent,
Wisconsin State Reformatory,
Respondent-Appellee.

No. 82–2761.

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1983.

Decided June 21, 1983.

Rehearing and Rehearing In Banc
Denied July 20, 1983.

Charles Bennett Vetzner, Chief Appellate Div., Wis. State Public Defender, Madison, Wis., for petitioner-appellant.

Michael R. Klos, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondent-appellee.

Before POSNER and COFFEY, Circuit Judges, and GRANT, District Judge.*

---

* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

COFFEY, Circuit Judge.

Frank Ruiz appeals from the district court's denial of his writ of habeas corpus, asserting that he was denied due process of law when the prosecutor failed to disclose prior to or during the trial that an agreement existed between the prosecutor and one of the witnesses against Mr. Ruiz whereby the prosecutor agreed to make a recommendation as to the witness' place of incarceration in exchange for the witness' testimony at trial. The district court found that the prosecutor's failure to disclose the agreement did not rise to the level of violating Ruiz's constitutional right to due process. We affirm.

Ruiz was convicted of first-degree murder and received a sentence of life imprisonment for the stabbing death of Frank Cisneroz at a tavern in Mount Pleasant, Wisconsin on November 15, 1973. Since that time Ruiz has unsuccessfully pursued various avenues seeking post-conviction relief.[1] At trial, Ruiz admitted killing Cisneroz but testified that he stabbed him in self-defense. The prosecution presented the testimony of one Thomas Garcia, an eyewitness to the stabbing, who testified that Ruiz had murdered Cisneroz in a fatal, vicious assault. At the close of the trial, after the defendant had been found guilty of first-degree murder but prior to sentencing, the prosecutor disclosed to the defense counsel and the court that while preparing for trial he had untold difficulties finding witnesses willing to testify against Ruiz because the witnesses stated they were afraid of retaliation by Ruiz or his relatives. The prosecutor further related that he had contacted Garcia regarding his preliminary hearing testimony and told him he would be called on to repeat this testimony at trial. At that time Garcia also expressed his fear of reprisal from Ruiz for testifying against him because he (Garcia) had a burglary charge pending against him in Kenosha County and he feared being confined in the same prison. The prosecutor further in-

formed the court that in order to eliminate Garcia's fears he contacted the Kenosha County D.A. and thereafter sent a letter to the Kenosha County prosecutor stating that Garcia had been informed of his prior communication with the Kenosha County D.A. concerning Garcia's place of confinement, and that if Garcia's charge was only a simple burglary without any aggravating facts, the Kenosha County authorities would not, in all probability, seek incarceration. The prosecuting attorney in the Ruiz case further stated that he had explained to Garcia that he could not in any way guarantee that Garcia would not be sentenced to confinement, but that he could only recommend that if Garcia were incarcerated he be confined to a different correction facility than the one holding Ruiz. Upon learning of the agreement between the prosecutor and Garcia, Ruiz's defense counsel made a motion for a new trial based on the prosecution's failure to disclose the substance of the letter to the defense prior to or during the trial. The trial court denied the motion for a new trial and the defendant appealed to the Wisconsin Supreme Court.

The Wisconsin Supreme Court analyzed the defendant's appeal in light of *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and held that "the evidence of the agreement now sought was not exculpatory in any sense of the word and the disclosure of the omitted evidence would not have created a reasonable doubt of the guilt of Ruiz that did not before exist." *Ruiz v. State*, 75 Wis.2d 230, 240, 249 N.W.2d 277 (1977). The court affirmed Ruiz's conviction, concluding that "there was no constitutional requirement that the prosecutor *sua sponte* disclose the [confinement] agreement with the witness Garcia" to defense counsel, because evidence of the agreement would not in any event "impel any greater likelihood of finding that Ruiz was not guilty." *Ruiz*, 75 Wis.2d at 243, 249 N.W.2d 277.

---

1. To date, Ruiz's challenge to his conviction has been the subject of six reported court decisions. These decisions, in chronological order, are: *Ruiz v. State*, 75 Wis.2d 230, 249 N.W.2d 277 (1976); *Ruiz v. Cady*, 453 F.Supp. 617

(E.D.Wis.1978); *Ruiz v. Cady*, 635 F.2d 584 (7th Cir.1980); *Ruiz v. Cady*, 507 F.Supp. 50 (E.D.Wis.1981); *Ruiz v. Cady*, 660 F.2d 337 (7th Cir.1981); and *Ruiz v. Cady*, 548 F.Supp. 764 (E.D.Wis.1982).

When Ruiz filed a petition for a writ of habeas corpus with the district court for the Eastern District of Wisconsin, the court applied the same *Agurs* standard applied by the Wisconsin Supreme Court, *Ruiz v. State,* 75 Wis.2d at 240, 249 N.W.2d 277, and found that evidence of the agreement between the prosecution and Garcia did not create a reasonable doubt as to Ruiz's guilt that did not otherwise exist. *Ruiz v. Cady,* 453 F.Supp. 617, 618 (E.D.Wis.1978). Ruiz appealed and this court vacated the district court's judgment, remanded the case, holding that the trial court had applied the correct legal standard in denying Ruiz's petition for a writ of habeas corpus, but that the district court erred in adopting the reasoning of the Wisconsin Supreme Court without first analyzing the trial record:

> "[T]he district court should have determined for itself the extent to which Garcia's testimony was consistent. Also, without examining the trial transcript the district court could not adequately assess other possible exculpatory effects of the undisclosed evidence. For example, depending upon the extent to which Garcia's testimony was impeached otherwise, the undisclosed evidence might have been either cumulative or fatal to the prosecution's case. Similarly, the exculpatory value of impeaching Garcia's testimony may depend upon the extent to which Ruiz' trial testimony was shaken."

*Ruiz v. Cady,* 635 F.2d 584, 588 (7th Cir. 1980).

On remand the district court granted Ruiz's petition for a writ of habeas corpus based upon the state's failure to file the state court transcript within the time limits set by the district court. *Ruiz v. Cady,* 507 F.Supp. 50 (E.D.Wis.1981). The state appealed and this judgment was also reversed by this court, *Ruiz v. Cady,* 660 F.2d 337 (7th Cir.1981), and again remanded to the district court for a decision on the merits.

In addressing the merits of the petitioner's claim, the district court followed the mandate of this court, examined the entire state trial transcript, applied the *Agurs*

standard and concluded that the prosecution's failure to reveal that it had reached an agreement with Garcia in exchange for his testimony did not violate Ruiz's due process rights. The court ruled that the evidence of the agreement, if available to the defense as impeachment evidence, would not have created a reasonable doubt of the guilt of Ruiz that did not before exist and further that there were no substantial inconsistencies between Garcia's preliminary hearing testimony and his testimony at trial. The trial court denied Ruiz's petition for a writ of habeas corpus and Ruiz again appeals.

■ The duty of the prosecution to reveal exculpatory evidence is governed by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), where the Supreme Court held:

> "[T]he suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution."

373 U.S. at 87, 83 S.Ct. at 1196–1197. Whether the prosecution commits reversible error in failing to reveal evidence depends upon whether the defendant made a specific or merely a general request for all exculpatory evidence, and further whether the "suppressed" evidence is exculpatory and material to the guilt and/or punishment of the defendant. Where, as in the instant case, the defendant makes only a general request for any exculpatory material covered by *Brady v. Maryland,* the Supreme Court has stated:

> "If the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial."

*United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–2402, 49 L.Ed.2d 342 (1976).[2]

---

2. This is the precise standard applied by the district court as well as by Wisconsin's Su-

preme Court in affirming Ruiz's conviction.

Ruiz asserts that the agreement gave Garcia "a motive to lie" and that impeachment of Garcia's testimony with proof of the agreement would, "in light of the entire record, have created a reasonable doubt as to petitioner Ruiz's guilt." Ruiz contends that Garcia's trial testimony was substantially different than the testimony he gave at the preliminary hearing, and that had he known of the agreement between the prosecution and Garcia, Ruiz could have more effectively impeached Garcia's trial testimony by establishing that Garcia had, in fact, a motive to lie.

■ Our review of the record, including the agreement between Garcia and the prosecution, does not substantiate the petitioner's argument that the agreement gave Garcia a "motive to lie." Prior to making any agreement with the prosecution, Garcia's testimony at the preliminary hearing regarding his eye witness observations was in stark contrast to Ruiz's claim of self-defense. Thereafter, in exchange for the prosecutor's agreement to inform Kenosha County authorities of Garcia's testimony against Ruiz at trial, Garcia merely agreed to repeat prior testimony given at the preliminary hearing before any agreement or letter had even been discussed. From our review of the record we find nothing indicating that Garcia ever agreed or intended to embellish his testimony so that it would be more favorable to the prosecution. In fact, a contrary understanding is found in the only actual evidence of the terms of the agreement, the letter from the Racine prosecutor to his Kenosha counterpart. The letter states:

> "I explained to Mr. Garcia that I had conferred with you, and that if his only charge was one of burglary without any aggravated facts, such as the use of the weapon, that your office would not push for incarceration. I further explained to him that I could not guarantee that he would not be incarcerated. As stated before, Mr. Garcia did testify and *did testify in the same manner as he did at the prelim.*"

The contents of the letter support our conclusion that the agreement between the prosecutor and Garcia only required the witness to repeat the same testimony previously given at the preliminary hearing, and thus the letter fails to give credence to Ruiz's theory that the agreement provided Garcia with a "motive to lie."

We also conclude that evidence of the agreement would not, in contrast to what Ruiz contends, demonstrate that there was anything more than minor inconsistencies between Garcia's testimony at the preliminary hearing and his testimony at trial. In light of the fact that the alleged inconsistencies in Garcia's testimony have been exhaustively analyzed by the Wisconsin Supreme Court, *Ruiz v. State,* 75 Wis.2d at 232–38, 249 N.W.2d 277, as well as by the United States District Court, *Ruiz v. Cady,* 548 F.Supp. at 766–69, we see no need to reiterate the substance of Garcia's testimony. From our independent review of the record, we agree with the district court that "[t]here were no substantial inconsistencies between Mr. Garcia's testimony at the preliminary hearing and at trial, so evidence of the agreement would not have created a reasonable doubt where none otherwise existed." 548 F.Supp. at 769. Since "there is no reasonable doubt about [Ruiz's] guilt whether or not the additional evidence [i.e., the agreement] is considered," *Agurs,* 427 U.S. at 112–13, 96 S.Ct. at 2401–2402, we hold the petitioner was not harmed by the failure of the prosecutor to release evidence of the agreement and therefore Ruiz is not entitled to a new trial.

In reaching our decision affirming the district court we are mindful of the need for finality of criminal convictions. Once a defendant has been convicted of a crime in a state court and has gone through the state appellate system and has had that conviction affirmed, absent a violation of the defendant's constitutional rights federal courts should not substitute their judgment for that of the highest court of the state. This case has been dragged out eight-and-one-half years while the convicted murderer continues to attempt to obtain a new trial on what can be characterized in this instance as a purely trifling and harmless

alleged omission by the prosecution. In the course of representing a defendant, it is incumbent upon defense counsel to make specific requests for specific, allegedly exculpatory evidence in the possession of the prosecution, and it is not the responsibility of the prosecutor or the judge to do the work of the defense counsel. All too often, as we are seeing in this case, the defense counsel makes a buckshot approach hoping a pellet will strike—this type of lack of preparation is not in the best interest of his client nor is it in the interest of justice. This court agrees with the decision of the state trial court, affirmed by the state Supreme Court and the federal district court, and thus we decline to disturb Ruiz's conviction on these grounds.

In summary, we hold that Ruiz was not denied his constitutional right to due process by the state's failure to supply him with irrelevant evidence relating to the prosecutor's humane agreement to contact the prosecutor in another county, informing him that Garcia had testified against a vicious and assaultive criminal whose relatives had threatened other witnesses and merely recommending that Garcia be incarcerated in a facility other than the one holding Ruiz. Even if this evidence had been available to the defendant, under no circumstances would it "have created a reasonable doubt that did not otherwise exist" as to guilt. *Ruiz,* 548 F.Supp. at 769. Therefore, we affirm the district court's decision denying Ruiz's petition for a writ of habeas corpus.