362

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LORNE GRAY *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—90—1153, 1—90—3200 cons.

Opinion filed August 12, 1993.

Marv Raidbard, of Chicago, for appellant Lorne Gray.

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant Steven Anderson.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Donald T. Lyman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a trial in the circuit court of Cook County, defendants, Lorne Gray and Steven Anderson, were convicted of first degree murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(3)), armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)), and aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(3)). Defendants were tried separately but simultaneously before two juries.

Defendant Gray was sentenced to a 70-year term of imprisonment for the murder conviction, a 30-year term for the armed robbery conviction, and a 15-year term for the aggravated kidnapping conviction, all to be served concurrently in the Illinois Department of Corrections. Defendant Anderson was sentenced to a term of natural life imprisonment for the murder conviction, a 30-year term of imprisonment for the armed robbery conviction, and a 15-year term for the aggravated kidnapping conviction. The armed robbery term was to run consecutively to the murder sentence and the aggravated kidnapping term was to run concurrently with the armed robbery sentence.

On appeal, defendants collectively argue that (1) the State's display of an evidence cart with the word "gangs" written on it, a notebook embossed with the words "Gang Prosecutions Unit" and the State's eliciting defendants' gang membership from a witness all violated a court order which prohibited the introduction of gang evidence; and (2) the trial court erroneously permitted a witness to testify that he refused to share his knowledge of the crime with police because he feared for his life, although there was no evidence that his life was threatened.

Defendant Gray individually asserts that the prosecutor made improper remarks during closing argument and to defense counsel, and that the trial court erroneously granted the State's motion *in limine*

excluding eyewitness testimony that made no identification of defendant Anderson in a lineup.

Defendant Anderson separately maintains that Detective Patrick Harrington's testimony that defendant Gray identified him as the offender violated his rights under the confrontation clause because defendant Gray was unavailable for cross-examination; that the natural life sentence for murder is excessive in view of his age and lack of criminal history; and that the case should be remanded for a *Batson* hearing due to the State's discriminatory use of its peremptory challenges to exclude two African-American venire members from the jury and the trial court's erroneous failure to require the State to provide race-neutral reasons for the exclusions.

We affirm.

The following pertinent facts were adduced at trial. Defendant Gray gave a signed, court-reported statement to an assistant State's Attorney at the Area 4 police station on October 23, 1987, which was read into the record at trial.

The statement revealed that on June 13, 1986, while defendants Gray and Anderson were driving in a stolen Buick Electra, they saw the victim exiting a Pontiac Grand Am. Defendant Anderson jumped out of the car and attempted to force the victim into the Buick. Defendant Gray saw that defendant Anderson was having difficulty forcing the victim into the car, so he got out and wrestled with the victim. Defendant Anderson then pulled out a gun and forced the victim into the back seat of the Grand Am. Defendant Anderson took the car keys from the victim and drove to Roosevelt Road and Sacramento Avenue, where he stopped and picked up his friend, Vincent Brumley. Brumley got into the back seat with the victim.

They then went to a currency exchange on Kedzie and Ogden Avenues. Defendant Anderson and the victim walked up to a window to receive service while defendant Gray remained at the door. Defendant Gray stated that the victim gave something to the woman at the window in exchange for money, which he gave to defendant Anderson. The three men got back into the car and defendant Anderson gave defendant Gray $50 of the money obtained at the currency exchange.

Defendant Gray, defendant Anderson, and Vincent Brumley then drove the victim to an alley where defendants Gray and Anderson got out of the car with the victim. Defendant Gray stood by the door of the car while defendant Anderson walked to a nearby lot with the victim. Defendant Anderson told the victim to lie down on his stomach and, as the victim tried to escape, defendant Anderson shot him in the back of the head.

Sergeant Patrick Garrity testified that defendant Anderson told him he shot the victim in the head in a vacant lot near Fillmore Street and Pulaski Road. Defendant Anderson stated that he, defendant Gray and Brumley saw a man approach a white car and either defendant Gray or Brumley said "let's get him." The three men forced the victim into his car and they left the area.

They then searched the victim, found some cash and a paycheck in his pocket, and drove to a currency exchange on California Avenue and Roosevelt Road. As they were unable to obtain any money at that location, they proceeded to a pay telephone where the victim was forced to phone a currency exchange at Ogden and Kedzie Avenues to ensure their ability to cash the check there. They went to that currency exchange. Defendant Anderson stated that defendant Gray and Brumley went into the currency exchange with the victim where they succeeded in cashing the check.

They proceeded to Four Star Cleaners, where they took the money from the victim and divided it amongst themselves. They then drove to an alley which runs parallel to Fillmore Street and stopped near a vacant lot where defendant Gray ordered the victim out of the car. Defendant Gray passed a handgun to Brumley who, in turn, passed it to defendant Anderson. Defendant Anderson approached the victim, stood over him, and shot him once in the head. The three men then returned to the Four Star Cleaners lot, abandoned the car and separated. Defendant Anderson subsequently recounted the same sequence of events to Detective Harrington.

After a trial separately but simultaneously by two juries, both defendants were convicted of first degree murder, armed robbery and aggravated kidnapping. They were sentenced to terms in the Illinois Department of Corrections relative to these convictions.

On appeal, defendants collectively contend that the State violated a court order prohibiting the introduction of gang evidence when, in the courtroom, it displayed both an evidence cart with the word "gangs" written on it and a notebook embossed with the words "Gang Prosecutions Unit."

During opening argument before defendant Gray's jury, the evidence cart and notebook with the objectionable words were visible in the courtroom. After defense counsel was made aware of the gang references on both the cart and the notebook, she made a motion for a mistrial. The trial court denied the motion stating, "It is not all that obvious. The book is side by side with several other books and binders and folders and the word 'gangs' on the cart is written with a magic

marker ***." Subsequently, the prosecutor covered the notebook and the side of the cart.

■ We believe that although the display of the cart and the notebook may constitute error, defendant Gray has not demonstrated that the jury actually saw the complained-of references and, consequently, cannot establish prejudice. The record is completely devoid of evidence that the jury was erroneously influenced by such information. We believe the trial court was correct in its assessment of this issue and hold the error to be harmless. *People v. Bass* (1991), 220 Ill. App. 3d 230, 251.

Defendant Anderson similarly argues prejudice resulting from the same gang references. This is a curious proposition especially in light of the fact that his jury was never exposed to these references. The record evinces that, by the time defendant Anderson's jury entered the courtroom, the situation had been cured as the prosecutor covered the objectionable words. Surely, this defendant's jury's lack of exposure to the gang references precludes any possibility of prejudice.

■ Relatedly, both defendants contend that Willie McCoy's testimony regarding his presence at the gang crimes section of Area 4 police station violated a court order barring the introduction of gang evidence. Each defendant's failure to include this issue in his post-trial motion waives its review on appeal. Preservation of an issue on appeal mandates both an objection at trial and the inclusion of such issue in the post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 186; see *People v. Arsberry* (1993), 242 Ill. App. 3d 1034, 1041.

■ Additionally, regarding this issue, defendants maintain that Willie McCoy's identification of them as gang members was prejudicial. In explaining why he did not want the police to attach his name to his statement, McCoy stated at trial: "I feared for my life because like I know the guys was in the gang and I had to live in the neighborhood." Defendants point to this statement in support of their claim of error.

Upon examination of this statement on its face, it is unclear to whom McCoy refers when he says "guys." This statement does not absolutely identify defendants as gang members, rather, in its context, it could reasonably be construed to make reference to individuals in McCoy's community who are gang members. Its relation to defendant Anderson is suspect because McCoy was unaware that he was involved in the crime. His knowledge pertained solely to defendant Gray. We believe any connection between this statement and defendants is at best tenuous.

Moreover, defendants have given detailed statements to police implicating themselves in the crime, which were corroborated by additional witnesses and physical evidence. We believe, due to the overwhelming evidence of defendants' guilt and the statement's ambiguous nature, any error attributable to this issue is harmless.

■ Next, defendants collectively opine that Willie McCoy's testimony was improper and prejudicial. McCoy testified that he hesitated to come forward because he feared for his life and that he only agreed to testify because the State promised to relocate him anonymously. Defendants base their contention of error on the fact that there were no specific threats against McCoy.

In detailing why he did not reveal any information to police regarding the crime until 1½ years later, McCoy stated: "I was scared *** like I was scared for my life ***. I didn't want to be talking to the police in front of peoples, *** because I was just afraid of my life *** like I didn't want everybody to say *** this guy pointed out a murderer."

This testimony explains McCoy's lengthy delay in sharing his knowledge with police. Evidently, he did not want to be known in the community as one who helped the police locate a murderer. At no time did McCoy state or imply that defendants were in a gang or that they threatened him. His comments were, conversely, confined to the conditions on the west side of Chicago and the reasons behind his reluctance to come forward.

We do not believe that the trial judge abused his discretion in allowing Willie McCoy to testify as to his fear for his life, and further conclude that as his testimony was general in character, it was not reasonably attributable to defendants. Hence, we deem it nonprejudicial. Further, the record does not support any threats or intimidation of McCoy at the hands of defendants and any references to his fears were thus harmless.

Next, defendant Gray solely claims that he was prejudiced by both the prosecutor's improper comments during closing argument and his personal attack against defense counsel.

Specifically, defendant Gray proffers that the prosecutor's characterization of his theory of the case, calling it "so ridiculous that it isn't even worthy of comment" and stating that "they [defense counsel] point to minutia, minute things in the case," was improper and prejudicial. Defense counsel made an objection to these statements which was overruled by the trial court.

■ It is well settled that attorneys are afforded wide latitude in making closing argument. " 'The character and scope of argument to

the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge *** properly exercised the discretion vested in him.' " (*People v. Morgan* (1986), 112 Ill. 2d 111, 131, quoting *People v. Smothers* (1973), 55 Ill. 2d 172, 176.) After a careful review of the prosecutor's remarks in context (*People v. Bryant* (1983), 94 Ill. 2d 514), they fail to constitute reversible error. In fact, the record indicates that the prosecutor's comments related to aspects of defendant Gray's case based on properly presented evidence which is surely permissible. We do not believe the trial court abused its discretion in allowing such argument.

Relatedly, defendant Gray contends that comments made by the prosecutor during closing argument were intended to inflame the passions and prejudice of the jury. In closing, the prosecutor stated that a witness had to be moved because "we don't want him to be dead" and alluded to the fact that there are family and friends of defendants who might inflict harm upon the witness. The trial court sustained defense counsel's objection to the allusion.

Although the comment was improper, bearing no relevance to defendant Gray's guilt or innocence, its impropriety does not automatically trigger reversible error. "[C]omments constitute reversible error only when they engender substantial prejudice against a defendant (see, *e.g., People v. Tiller* (1982), 94 Ill. 2d 303, 321), such that it is impossible to say whether or not a verdict of guilt resulted from those comments." (*People v. Henderson* (1990), 142 Ill. 2d 258, 323.) We believe that the trial court's sustaining of defense counsel's objection and its admonition to the jury, "[n]either opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded," were sufficient to neutralize any potential prejudice against defendant Gray.

Additionally, defendant Gray asserts that the prosecutor's statement during rebuttal argument, "you [the jury] get to decide whether you're going to protect yourselves and your families and your community from Lorne Gray and Steven Anderson and his kind," prejudiced him. The trial court overruled defense counsel's objection to this statement. Applying the substantial prejudice standard outlined above, we cannot say that the complained-of remarks were of such extreme magnitude as to have denied him a fair trial.

Defendant Gray cites other comments which he argues prejudiced him, but we will not review such remarks as they are waived on appeal. Preservation of an issue for review requires both an objection at trial and the inclusion of the issue in the post-trial motion. The failure

to complete these necessary steps results in waiver of these issues. *People v. Enoch* (1988), 122 Ill. 2d 176, 186; see *People v. Arsberry* (1993), 242 Ill. App. 3d 1034, 1041.

Next, defendant Gray maintains that the trial court's grant of the State's motion *in limine*, erroneously excluding eyewitness testimony which failed to identify defendant Anderson in a lineup, prejudiced him. Defendant Gray posits that the testimony of two eyewitnesses, Derrick Hendrix and Stephanie Morgan, was crucial to the establishment of his confession's falsity. The trial court prohibited this testimony, characterizing it as both hearsay and irrelevant.

■■ " 'The test for admissibility of evidence is whether it fairly tends to prove the particular offense charged' *(People v. Peter* (1973), 55 Ill. 2d 443, 459), and whether what is offered as evidence will be admitted or excluded depends upon whether it tends to make the question of guilt more or less probable ***." *(People v. Ward* (1984), 101 Ill. 2d 443, 455; see *People v. Rodgers* (1972), 53 Ill. 2d 207, 214-15.) It is the province of the trial court to determine the relevancy of evidence, and this determination will not be disturbed absent an abuse of discretion. *(Ward,* 101 Ill. 2d at 455-56.) Application of the preceding standards leads us to conclude that the excluded nonidentification testimony bears no relationship whatsoever to defendant Gray's guilt. Further, defendant Gray's description of the nexus between his confession and the nonidentification of defendant Anderson is extremely remote and we will not attempt to fill in any gaps here.

Next, defendant Anderson solely argues Detective Patrick Harrington's testimony—that defendant Gray implicated him in the robbery and murder of the victim—violated his rights under the confrontation clause because defendant Gray did not testify at trial and was thus unavailable for cross-examination. Specifically, Detective Harrington stated that, while in an interview room at the police station, defendant Gray identified defendant Anderson as the individual involved in the crime he previously recounted to police.

■■ "Confrontation errors *** do not automatically warrant reversal [citations], and the defendant's convictions may therefore be affirmed if we are able to conclude that the error was harmless beyond a reasonable doubt [citation]." *(People v. Johnson* (1987), 116 Ill. 2d 13, 28; see *People v. Miller* (1992), 225 Ill. App. 3d 92, 103.) We do not believe that defendant Anderson was substantially prejudiced by any testimony given by Detective Harrington, particularly in view of the overwhelming and incontrovertible evidence of defendant Anderson's guilt. As the outcome of the trial was unaffected by contended error, we find the error to be harmless beyond a reasonable doubt.

■ Next, defendant Anderson asserts that the natural life sentence he received was excessive in light of his age and lack of criminal history. We disagree.

In sentencing defendant Anderson, the trial court determined that aggravating factors were present to justify the imposition of a life sentence. The relevant statute provides:

> "[I]f the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence defendant to a term of natural life imprisonment ***." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(1)(b).)

The trial court explicitly found the presence of aggravating factors under section 9—1(b) which were sufficient to justify the natural life term imposed. Therefore, there is no error respecting the consistency of defendant Anderson's sentence.

However, defendant Anderson claims that this statutorily permissible sentence was excessive. "[T]he trial court is *** the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight" and absent an abuse of discretion such a determination will not be overturned. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) The trial court found a "minimal amount of mitigation" and determined defendant Anderson's acts to be "the type of heinous behavior that was contemplated by the Legislature when they passed the statute." We find defendant Anderson's sentence to be proportionate to the offense committed and accordingly find no abuse of discretion in the trial court's sentencing of him.

Finally, defendant Anderson opines that this case be remanded for a *Batson* hearing, which would require the State to articulate race-neutral reasons for its use of peremptory challenges to exclude two African-American women from the jury.

In *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the United States Supreme Court prohibited the use of peremptory challenges to exclude potential jurors solely based on race. Before a *Batson* violation can be established, however, it is incumbent upon defendant to demonstrate a *prima facie* case of racial discrimination in view of all the relevant circumstances. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723; see *People v. Evans* (1988), 125 Ill. 2d 50, 63.

■ As defendant Anderson has failed to preserve the record, we are unable to discern the race of either the jury or the other excluded venire members. We know of no rule of law that requires us to guess or speculate as to the racial composition of the jury in determining a *Batson* violation. Yet, this is what defendant Anderson proposes we do although any determination made here would be entirely based on speculation and conjecture. We decline to undertake this expedition as it certainly is not in accordance with the intent of *Batson*. Defendant Anderson has simply established that the State used two of its peremptory challenges to exclude African-American women from the jury.

The challenge of African-American venirepersons alone does not raise an inference of discrimination. (*Batson*, 476 U.S. at 101, 90 L. Ed. 2d at 91, 106 S. Ct. at 1725.) Defendant Anderson's failure to satisfy his onus of preserving the record waives substantive review of this contention.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL and HOFFMAN, JJ., concur.