Steven **ANDERSON,** Petitioner,

v.

Thomas F. **PAGE,** Respondent.

No. 97 C 3352.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 11, 1999.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Steven Anderson petitions this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Following a jury trial, Anderson was convicted of first degree murder, armed robbery, and aggravated kidnaping. The trial court sentenced Anderson to a life term, 30–year term, and 15–year term respectively. Anderson unsuccessfully pursued state appellate remedies and now raises three issues in his habeas petition: 1) he received ineffective assistance of appellate counsel; 2) the admission of his non-testifying codefendant's confession violated the Confrontation Clause; and 3) the State's use of two peremptory challenges against African–American venire persons required a hearing under *Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

## RELEVANT FACTS

When considering a habeas corpus petition, the Court presumes that the factual

determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Accordingly, we adopt the facts as set forth by the Illinois Appellate Court. *People v. Anderson*, 252 Ill.App.3d 362, 192 Ill.Dec. 129, 625 N.E.2d 89, 91–2 (1993).

In October 1987, Willie McCoy approached the gang crimes unit of the Chicago Police Department with information regarding the 1986 murder of Alan Cypin. McCoy informed officers that he could identify a man driving Cypin's car the day after Cypin was murdered. McCoy subsequently identified Lorne Gray as that man. Upon police questioning, Gray confessed his involvement in Cypin's murder and implicated Steven Anderson as well.

After receiving a message that the Chicago Police Department was looking for him, Anderson voluntarily went to the police station shortly after midnight on October 23, 1987. When Anderson arrived at the police station, Officer Thedford placed Anderson under arrest, read him his rights, and questioned him about Cypin's murder. Anderson eventually confessed to the crime during a polygraph test administered by Sergeant Patrick Garrity. Anderson repeated his confession to Officers Garrity, Harrington, and Puttin. Later that evening, Anderson admitted his involvement in Cypin's murder to assistant state's attorney Frykland and confessed a fourth time during a court-reported statement.

The State charged Anderson with first degree murder, armed robbery, and aggravated kidnaping. Anderson and co-defendant Lorne Gray were tried separately but simultaneously by two juries. Gray's sworn statement implicating himself and Anderson was read into the record at trial. In addition, Officer Garrity testified that Anderson told him the following:

Defendant Anderson stated that he, defendant Gray and Brumley saw a man approach a white car and either defendant Gray or Brumley said 'let's get him.' The three men forced the victim into his car and they left the area.

They then searched the victim, found some cash and a paycheck in his pocket, and drove to a currency exchange on California Avenue and Roosevelt Road. As they were unable to obtain money at that location, they proceeded to a pay telephone where the victim was forced to phone a currency exchange at Ogden and Kedzie Avenues to ensure their ability to cash the check there. They went to that currency exchange. Defendant Anderson stated that defendant Gray and Brumley went into the currency exchange with the victim where they succeeded in cashing the check.

They proceeded to Four Star Cleaners where they took the money from the victim and divided it amongst themselves. They then drove to an alley which runs parallel to Fillmore Street and stopped near a vacant lot where defendant Gray ordered the victim out of the car. Defendant Gray passed a handgun to Brumley, who, in turn, passed it to defendant Anderson. Defendant Anderson approached the victim, stood over him, and shot him once in the head. The three men then returned to the Four Star Cleaners lot, abandoned the car and separated.

*Id.* Office Patrick Harrington testified that Anderson related the same story to him, and Officers Garrity and Puttin.[1]

At the close of the evidence, the juries convicted both defendants of murder, armed robbery, and aggravated kidnaping. The trial court sentenced Anderson to life imprisonment for Cypin's murder, a 30–year term for armed robbery, and a 15–year term for aggravated kidnaping. Anderson appealed this ruling to the Illinois Appellate Court, claiming that the State violated a court order prohibiting the

---

1. Of his four confessions, only the first and second were admitted at trial, via testimony by Officers Garrity and Harrington. Anderson's latter two confessions were not entered into evidence at trial.

introduction of gang evidence; that certain testimony was improper and prejudicial; that Gray's statement implicating Anderson in the crime violated his Confrontation Clause rights; that his life sentence was excessive in light of his age and lack of criminal history; and that the Equal Protection Clause required a *Batson* hearing because the State used two peremptory challenges against African–American venirepersons. The Illinois Appellate Court affirmed Anderson's conviction on August 12, 1993. *Anderson*, 192 Ill.Dec. 129, 625 N.E.2d at 96. Anderson raised these same issues in his petitioner for leave to appeal to the Illinois Supreme Court, which the court summarily denied.

## ANALYSIS

■ Anderson filed this habeas corpus petition on March 5, 1997, and therefore it is governed by the recent amendments to 28 U.S.C. § 2254. Section 2254(d)(1) provides that habeas relief may be awarded only where the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" as determined by the United States Supreme Court. In other words, this Court will not evaluate Anderson's claims de novo; rather, we analyze whether the Illinois appellate court decision was legally consistent with Supreme Court caselaw, and whether that court reasonably applied Supreme Court precedent to the facts of Anderson's case. Having set forth the applicable standard, we address the merits of each of Anderson's arguments in turn.

## I. Ineffective Assistance of Counsel

Anderson alleges that appellate counsel's representation was constitutionally deficient because he failed to challenge the admissibility of Anderson's confession at trial. Specifically, Anderson argues that, because he requested an attorney before giving his court-reported statement, his confession should not have been admitted at trial. Before we address the merits of this claim, we must determine whether Anderson's claim is properly before us. *O'Sullivan v. Boerckel*, —— U.S. ——, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999).

### A. Procedural Default and Exhaustion

■ Before a petitioner may obtain federal review of his state conviction, the petitioner must exhaust his state court remedies, and present his federal claims to the state court for review. "Exhaustion is accomplished when claims have been presented to the highest state court for a ruling on the merits, or when the claims could not be brought in state court because no remedies remain available at the time the federal petition is filed." *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.) (citing *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir.1990)). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

■ Procedural default also occurs when the state court decision supporting the petitioner's confinement was decided on an adequate and independent state law ground. *See Coleman*, 501 U.S. at 729–32, 111 S.Ct. 2546. As the *Coleman* Court explained, "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 731–32, 111 S.Ct. 2546.

■ Notwithstanding a procedural default, habeas review may still be available if the petitioner can show cause for the default and actual prejudice, or demonstrate that a failure to consider the claim

will result in a fundamental miscarriage of justice. *Id.* at 750, 111 S.Ct. 2546.

■ In the instant case, Anderson did not raise his ineffective assistance of counsel claim in his petition for leave to appeal to the Illinois Supreme Court. Furthermore, state post-conviction remedies are no longer available to Anderson. *See* 725 ILCS 5/122–1(c). Likewise, he makes no argument as to cause and prejudice with respect to this omission. Therefore, Anderson's ineffective assistance of counsel claim is procedurally barred. *See Boerckel,* 119 S.Ct. at 1733 (failure to raise a claim before the Illinois Supreme Court results in procedural default even though the Illinois Supreme Court's review is discretionary).

### B. Merits

Even if we were to address the merits of Anderson's ineffective assistance of counsel claim, we find that he cannot satisfy *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a petitioner to show both deficient performance and prejudice. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. This requires a showing "that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Second, a defendant must show that he or she was prejudiced by counsel's deficient performance. *Id.* To meet this showing, the defendant must establish that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Anderson cannot establish the requisite

prejudice because the confessions that the State relied on at trial—and that appellate counsel failed to challenge—did not violate *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Anderson alleges that his court-reported statement violated *Miranda* and its progeny because the interrogation proceeded after he requested an attorney. *Miranda* prohibits the State from relying in its case-in-chief on confessions obtained after the accused requests counsel. 384 U.S. at 479, 86 S.Ct. 1602. When the accused requests counsel, the interrogation must cease *Id.* at 474, 86 S.Ct. 1602. Further, in *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court ruled that "an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Nevertheless, these decisions do not assist Anderson because his court-reported statement was not in evidence at his trial.

At trial, the State relied on Officer Garrity's recitation of Anderson's confession given during his polygraph examination and on Officer Harrington's testimony concerning Anderson's confession to him, Garrity, and Puttin shortly thereafter. The State entered uncontested testimony by Officers Thedford, Garrity, and Harrington that Anderson was read his *Miranda* rights at least three times prior to these two confessions. Further, the State entered evidence that the two confessions did not result from physical or psychological coercion.[2] In sum, the evidence demonstrates that Anderson's first two confes-

---

2. There is contested evidence with respect to whether Anderson's confession to the State's attorney and his court-reported statement (neither of which was relied upon at trial) resulted from police coercion. Anderson claims that Officer Thedford struck him in the face three times after he confessed to Garrity, Harrington, and Puttin and before he confessed to the State's attorney. He also claims that the police promised him that he could go home if he confessed. The police deny these accusations. Notably, claimant does not allege that his first two confessions were coerced.

sions were voluntary and given after the police read Anderson his rights—*Miranda* requires nothing more. 384 U.S. at 479, 86 S.Ct. 1602. The potential *Miranda* violations with respect to his latter two confessions do not nullify the validity of the first two. *Id.* Thus, the trial court's conclusion that Anderson's confession satisfied Constitutional standards was not unreasonable.

## II. Confrontation Clause

 Anderson next challenges the trial court's admission of Gray's confession at Anderson's trial. The Confrontation Clause of the Sixth Amendment guarantees a defendant in a criminal trial the right to cross-examine any witness testifying against him. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The introduction of a non-testifying co-defendant's statement that inculpates the defendant violates the Confrontation Clause because the defendant does not have an opportunity to confront the witness testifying against him. *See Cruz v. New York,* 481 U.S. 186, 190, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987) (finding that the introduction of a co-defendant's videotaped confession violated the defendant's Confrontation Clause rights where the co-defendant did not take the stand). This is true even if the non-testifying co-defendant's statement interlocks with the defendant's own confession. See *Lilly v. Virginia,* —— U.S. ——, 119 S.Ct. 1887, 1893, 144 L.Ed.2d 117 (1999) (holding that the introduction of the co-defendant's confession violated petitioner's Confrontation Clause rights even though the petitioner's own confession corroborated his co-defendant's statement).

We agree with the Illinois Appellate Court that the trial court's admission of Gray's statement violated the petitioner's rights under *Bruton.* We further find,

however, that the Illinois Appellate Court's ruling that this error was harmless beyond a reasonable doubt was not contrary to, or an unreasonable application of, United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

 A constitutional trial error does not warrant habeas relief unless the error " 'had [a] substantial and injurious effect or influence in determining the jury's verdict'." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 766, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).[3]

 Federal courts determine whether Confrontation Clause violations were harmless by looking at five factors: "1) the importance of the witness's testimony in the prosecution's case; 2) whether the testimony was cumulative; 3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; 4) the extent of cross-examination otherwise permitted; and 5) the overall strength of the prosecution's case." *United States v. Eskridge,* 164 F.3d 1042, 1044 (7th Cir.1998) (citation omitted). When the defendant stands by his confession, the Supreme Court opines that the *Bruton* error is harmless if the non-testifying co-defendant's confession serves merely to support the defendant's own confession. *Cruz,* 481 U.S. at 192, 107 S.Ct. 1714; *see also Glock v. Singletary,* 36 F.3d 1014, 1022 (11th Cir.1994), *rev'd on other grounds,* 51 F.3d 942 (11th Cir.1995) (upholding conviction where petitioner's confession "substantially corroborate[d]" his co-defendant's confession and that "the interlocking nature of multiple confessions support[ed] a finding that ... the *Bruton* violation caused by the admission of [the co-defendant's] statement was harmless error."); *Montes v. Jenkins,* 626 F.2d 584, 589 (7th Cir.1980) (a Confrontation Clause violation is harmless where the co-defen-

---

**3.** Habeas courts, including those in the Seventh Circuit, use the deferential *Brecht* standard with respect to Confrontation Clause errors when the state court applied harmless error analysis. *See, e.g., Lindh v. Murphy,* 124 F.3d 899, 902 (7th Cir.1997); *Wade v. Cooper,* 965 F.Supp. 1140, 1145 (N.D.Ill.1997).

dant corroborated petitioner's confession and petitioner stood by confession because cross-examining the co-defendant could only serve to impeach the petitioner's own confession).

The trial court's admission of Gray's confession did not have a "substantial and injurious effect" on the outcome of the petitioner's trial. Although Gray's confession implicated Anderson in Cypin's murder, Anderson also confessed to the crime, and the two confessions were corroborating in all material respects. Even excluding Gray's confession, Anderson's confession was sufficient to sustain his conviction. *See United States ex rel. Pollard v. McVicar*, No. 94 C 5467, 1995 WL 573552, at *3 (N.D.Ill. Sept.26, 1995) (quoting *United States v. Fleming*, 504 F.2d 1045, 1048–49 (7th Cir.1974) ("an admission of homicide must be corroborated by tangible evidence of the death of the supposed victim. There need in such a case be no link, outside the confession, between the injury and the accused who admits having inflicted it.")). Because we find that a reasonable jury would have reached the same conclusion with respect to Anderson's guilt without Gray's confession, it cannot be said that the error had a "substantial and injurious effect." *Glock*, 36 F.3d at 1023. The Illinois Appellate Court's conclusion that the Confrontation Clause error was harmless is not unreasonable and, therefore, does not warrant habeas relief.

### III. Batson Hearing

Anderson's final contention is that his case be remanded for a *Batson* hearing,

which would require the State to articulate race-neutral reasons for its use of two of its five peremptory challenges to exclude African–American women from the jury.[4] In *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court prohibited the use of peremptory challenges to exclude potential jurors solely on the basis of race and set forth a three-step approach to evaluate such claims. The first step is that the defendant must establish a *prima facie* case of purposeful discrimination in the selection of the jury. *Id.* A defendant establishes a *prima facie* case by showing that: a) he is a member of a cognizable racial group; b) the prosecutor used peremptory challenges to remove members of that racial group from the venire; and c) all the relevant circumstances raised an inference that the State exercised its peremptory challenges on account of race.[5] *Id.* If the defendant establishes a *prima facie* case, the hearing proceeds to step two whereby the burden shifts to the State to furnish race-neutral explanations for its peremptory challenges. *Id.* at 97, 106 S.Ct. 1712. If the State meets this requirement, then the court must decide whether the defendant has proven that the State purposefully discriminated. *Id.* at 98, 106 S.Ct. 1712.

■■■■ The Respondent's argument that this claim is procedurally barred because of an independent and adequate state ground is without merit.[6] However, Anderson cannot meet his burden of establishing a *prima facie* case of purposeful

---

**4.** We are unable to determine from the record before us whether the State exercised five or seven peremptory challenges.

**5.** The Supreme Court later eliminated the requirement that the defendant and the excused venireperson be of the same race. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

**6.** The Illinois Appellate Court held that Anderson waived his *Batson* claim because he failed to preserve the record as to the racial composition of the venire and the jury. *Peo-*

*ple v. Anderson*, 252 Ill.App.3d 362, 192 Ill. Dec. 129, 625 N.E.2d 89, 96 (1993). Respondent's assertion that Anderson's *Batson* claim is procedurally barred because of an independent and adequate state ground contradicts *Rosa v. Peters*, 36 F.3d 625, 633 (7th Cir.1994) (failure to preserve record as to racial composition not an adequate ground for procedurally disqualifying *Batson* claims because Illinois courts have not consistently prohibited review of *Batson* claims when the defendant failed to preserve the record on this issue).

discrimination. To establish a *prima facie* case of discrimination, a petitioner "must do more than merely point to the fact that the government excluded an African–American venire person by using a peremptory challenge." *United States v. Cooke*, 110 F.3d 1288, 1301 (7th Cir.1997). Rather, federal courts must consider all relevant circumstances, including "the pattern of strikes, and the prosecutor's questions and statements." *United States v. Brisk*, 171 F.3d 514, 523 (7th Cir.1999).[7]

For example, in *McCain v. Gramley*, 96 F.3d 288, 291 (7th Cir.1996), the court concluded that the defendant had not established a *prima facie* case of discrimination where his sole argument was that the prosecution's use of 40% of its peremptory challenges (two out of five) against African–Americans was greater than the percentage of African–Americans on the total venire (17%). This evidence alone was insufficient to raise an inference that the prosecution exercised its peremptory challenges to remove prospective jurors on the basis of race. *Id.* at 292; *Brisk*, 171 F.3d at 523 (no *prima facie* case of discrimination where the government used four of six peremptories to exclude women, but there were more women than men on the venire).

■ The limited record before us fails to support Anderson's claim that the State exercised its peremptory challenges in a discriminatory manner. The burden is on Anderson to preserve a record sufficient to prove that the prosecution purposefully discriminated. See *People v. Hudson*, 157 Ill.2d 401, 193 Ill.Dec. 128, 626 N.E.2d 161, 172 (1993) ("the defendant asserting the

*Batson* claim has the burden of preserving the record"). Yet, the only evidence that Anderson has proffered in support of his *Batson* claim is that the prosecution used two of its five peremptory challenges against African–Americans and that the two people are dissimilar in respects other than race. The record does not reveal whether these two were the only African–American venire persons, whether other African–Americans served on the jury, or what number of strikes the prosecution used against non-African-American venire persons.

Perhaps the trial court could have been more proactive in enforcing its *Batson* responsibilities. Yet, we simply are not in a position to conclude that the trial court violated the Constitution by allowing the State's peremptory challenges. Thus, we must also reject this final prong of Anderson's petition.

## CONCLUSION

Steven Anderson claims that he is entitled to habeas relief because he received ineffective assistance of appellate counsel, the introduction of his codefendant's confession was unconstitutional, and the State exercised its peremptory challenges in a racially discriminatory manner. For the reasons stated above, we find all of Anderson's claims to be lacking in merit and deny his petition for a writ of habeas corpus. This order shall constitute a final order for purposes of Fed.R.Civ.P. 58.

---

7. Illinois courts also consider the following factors:

> "(1) racial identity between the defendant and the excluded venire persons; (2) a pattern of strikes against African–American venire persons; (3) a disproportionate use of peremptory challenges against African–American venire persons; (4) the level of African–American representation in the venire as compared to the jury; (5) the prosecutor's questions and statements during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African–American venire persons were a heterogeneous group sharing race as their only common characteristics; and (7) the race of the defendant, victim, and witnesses. A trial judge's determination of whether a defendant has demonstrated a *prima facie* case of discriminatory jury selection will not be overturned unless it is against the manifest weight of the evidence. *People v. Williams*, 173 Ill.2d 48, 218 Ill.Dec. 916, 670 N.E.2d 638, 650 (1996) (citations omitted).